**GAUNTLETT LAW**
David A. Gauntlett (SBN 96399)
James A. Lowe (SBN 214383)
5 Pelican Vista Dr.
Newport Coast, CA 92657
(949) 553-1010 / Fax: (949) 533-2050
info@gauntlettlaw.com
jal@gauntlettlaw.com

Attorneys for Plaintiff
WILLIAM D. MCCULLOUGH

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM D. MCCULLOUGH<br><br><br>Plaintiff,<br><br>vs.<br><br>GRANADA INDEMNITY COMPANY,<br><br>Defendant. | Case No.<br><br><br>**COMPLAINT FOR:**<br><br>**(1) DECLARATORY RELIEF**<br>**(2) BREACH OF CONTRACT**<br>**(3) BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**JURY TRIAL DEMANDED** |

323264_1.docx

Complaint

1.  Plaintiff William D. McCullough ("Plaintiff" or "McCullough") owns property at 5289 E. Toledo in Long Beach, California. On April 28, 2025, Kaziah Mari Thornton-Tello ("Claimant") suffered injury when the roof of the unit collapsed. Claimant sent a demand letter dated May 27, 2025 asserting that McCullough was liable for damages arising from the incident. A true and correct copy of the demand letter is attached as **Exhibit "1."**

2.  McCullough promptly tendered the claim to Defendant Granada Indemnity Company ("Granada") seeking defense and indemnity for Ms. Thornton-Tello's claim (the "Underlying Claim"). On July 7, 2025, Granada denied any obligation to defend or indemnify the claim. The parties exchanged additional correspondence over the following months, but the coverage dispute remained unresolved.

3.  In this insurance coverage suit, Plaintiff McCullough seeks: (i) a judicial declaration that Defendant Granada has a duty to defend McCullough against the Underlying Claim; (ii) damages from Granada for its breach of contract; and (iii) damages from Granada for its breach of the covenant of good faith and fair dealing.

## THE PARTIES

4.  Plaintiff McCullough is an individual domiciled in Long Beach, California. Therefore, for diversity of citizenship purposes, McCullough is a citizen of California.

5.  On information and belief, Granada is an unincorporated company headquartered in Long Beach, New York. Therefore, for diversity of citizenship purposes, Granada is a citizen of New York.

## JURISDICTION

6.  This is an action for declaratory relief pursuant to 28 U.S.C. § 2201.

7.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that complete diversity exists between the parties, as the Plaintiff is a citizen of California and the Defendant is a citizen New York, for purposes of diversity

1 | jurisdiction.

2 | 8.    The amount in controversy exceeds the sum or value of $75,000 exclusive

3 | of interest and costs. In addition to other relief, declaratory relief is sought.

4 | 9.    This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a)

5 | over the contract and covenant of good faith and fair dealing claims.

6 | **VENUE**

7 | 10.    Venue is proper in the United States District Court for the Central District

8 | of California pursuant to 28 U.S.C. § 1391 because a substantial part of the events or

9 | omissions giving rise to the claim alleged herein occurred in this District.

10 | 11.    The acts complained of occurred in Los Angeles County California and

11 | within the jurisdiction of this Court.

12 | 12.    On information and belief, Granada is an insurance company actively

13 | selling insurance policies in California, including in the Central District of California.

14 | 13.    Granada sold the Commercial General Liability ("CGL") insurance policy

15 | at issue in this case to McCullough concerning a property located in the Central District

16 | of California where the policy was delivered.

17 | 14.    The Granada policy at issue was intended to cover McCullough's

18 | commercial interests in the Central District of California.

19 | 15.    The alleged wrongful conduct forming the basis of the Underlying Claim

20 | occurred within the Central District of California.

21 | 16.    Part of the performance required under the Granada policy at issue,

22 | including, without limitation, the incurring and payment for attorneys' defense fees,

23 | occurred within the Central District of California.

24 | **THE GRANADA CGL POLICY**

25 | 17.    Granada sold McCullough a CGL policy (Policy Number GR02-002584-

26 | 01) for the period March 15, 2025 to March 15, 2026. The policy is attached hereto as

27 | **Exhibit "2."**

28 |

18.    The policy contains the following coverage provisions for "bodily injury" and "property damage":

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as  damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

. . .

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had  occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation,

change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

19.     The policy also contains the following exclusions applicable to the policy's "bodily injury" and "property damage" coverage:

a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured  contract", reasonable attorneys' fees and necessary litigation expenses incurred by or  for a party other than an insured are deemed to be damages because  of "bodily  injury"  or  "property  damage", provided:

(a) Liability to such party for, or for the cost of, that

4

party's defense has also been assumed in the same "insured contract"; and

(b) Such attorneys' fees and litigation expenses are for defense of that party against a  civil or alternative dispute resolution proceeding in  which damages to which this insurance applies are alleged.

. . .

o. Personal And Advertising Injury

"Bodily injury" arising out of "personal and advertising injury."

. . .

20.    The policy also contains the following coverage provisions for "personal and advertising injury":

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as  damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.

. . .

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during

5

1    the policy period.

2    21.    The policy also contains the following exclusions applicable to the policy's

3    "personal and advertising injury" coverage:

4            This insurance does not apply to:

5            a. Knowing Violation Of Rights Of Another

6            "Personal and advertising injury" caused by or at the direction

7            of the insured with the knowledge that the act would violate

8            the rights of another and would inflict "personal and

9            advertising injury."

10           . . .

11           d. Criminal Acts

12           "Personal and advertising injury" arising out of a criminal act

13           committed by or at the direction of the insured.

14           e. Contractual Liability

15           "Personal and advertising injury" for which the insured has

16           assumed liability in a contract or agreement. This exclusion

17           does not apply to liability for damages that the insured would

18           have in the absence of the contract or agreement.

19           f. Breach of Contract

20           "Personal and advertising injury" arising out of a breach of

21           contract, except an implied contract to use another advertising

22           idea in your "advertisement."

23    22.    The policy contains the following provisions defining who qualifies as an

24    "insured":

25            1. If you are designated in the Declarations as:

26            a. An individual, you and your spouse are insureds, but only

27            with respect to the conduct of a business of which you are the

28

323264_1.docx

6

Complaint

1   sole owner.

2   . . .

3   2. Each of the following is also an insured:

4   a. Your "volunteer workers" only while performing duties

5   related to the conduct of your business, or your "employees,"

6   other than either your "executive officers" (if you are an

7   organization other than a partnership, joint venture or limited

8   liability company) or your managers (if you are a limited

9   liability company), but only for acts within the scope of their

10  employment by you or while performing duties related to the

11  conduct of your business. However, none of these

12  "employees" or "volunteer workers" are insureds for:

13     (1) "Bodily injury" or "personal and advertising injury":

14        (a) To you, to your partners or members (if you are a

15        partnership or joint venture), to your members (if you

16        are a limited liability company), to a co-"employee"

17        while in the course of his or her employment or

18        performing duties related to the conduct of your

19        business, or to your other "volunteer workers" while

20        performing duties related to the conduct of your

21        business;

22        . . .

23        (c) For which there is any obligation to share damages

24        with or repay someone else who must pay damages

25        because of the injury described in Paragraph (1)(a) or

26        (b) above;

27     . . .

28

(2) "Property damage" to property:

    (a) Owned, occupied or used by;

    (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

    you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

23.    The policy contains the following definitions:

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

. . .

9. "Insured contract" means:

    a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract"

. . .

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

. . .

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

. . .

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

24.    The policy is also modified by a "Habitability Exclusion Habitability Sublimit" endorsement. It adds the following exclusion that applies to both "bodily injury" and "property damage" coverage as well as "personal and advertising injury" coverage:

Except to the extent coverage is provided in (B) below, this insurance does not apply  to damages or expenses, and we shall have no duty to defend any claim, proceeding or "suit" in any way based on, attributed to, arising out of or in any manner related to alleged or actual "bodily injury", "property damage", "personal and advertising injury", diminished value

of property, or mental or emotional injuries arising out of or related in any way to "habitability", including but not limited to, claims arising out of alleged or actual breach of the following:

(1) Civil Codes;

(2) Health and Safety Codes;

(3) Any Housing and Urban Development laws, ordinances, or statutes; (4) Rent stabilization laws and ordinances;

(5) Federal, State, or local section 8 (government subsidized) programs;

(6) Any administrative rules or regulations pertaining to any of the foregoing, including but not limited to those promulgated by Federal, State, or local municipalities;

(7) Any obligation to maintain any premises in, or restore any premises to, a sanitary, healthy, habitable, and tenantable condition;

(8) Breach of any lease, rental agreement, warranty, or covenant to maintain the "habitability" of premises;

(9) Any type of common law; or

(10) Actual or constructive wrongful entry or eviction arising out of the above.

25.    The "Habitability Exclusion Habitability Sublimit" endorsement also states that the following definitions are applicable solely "[f]or purposes of this endorsement":

"Defense Costs" means all fees and costs we incur to defend an insured against any claim or "suit", including all

paragraphs of SUPPLEMENTARY PAYMENTS-COVERAGES A AND B.

"Habitability" means living environment fit for occupancy by human beings in a sanitary, healthy, habitable and tenantable condition.

**CORRESPONDENCE BETWEEN MCCULLOUGH AND GRANADA**

26.    Following prompt tender of the Underlying Claim, Granada denied any obligation to defend or indemnify McCullough in a letter dated July 7, 2025. A true and correct copy of that letter is attached as **Exhibit "3."**

27.    Upon receipt of the July 7, 2025 denial letter, an insurance advisor for McCullough responded the same day via email requesting Granada reconsider its coverage determination. A true and correct copy of that email is attached as **Exhibit "4."**

**28.**    On August 11, 2025, Granada replied through retained counsel reaffirming its determination that it had no duty to defend or indemnify based on the Underlying Claim. A true and correct copy of that letter is attached as **Exhibit "5."**

29.    On August 12, 2025, McCullough's insurance adviser once again wrote to Granada via email, rebutting the conclusions in Granada's denial. A true and correct copy of that email is attached as **Exhibit "6."**

**30.**    On August 14, 2024, Granada's counsel responded, once again denying that the Underlying Claim evidenced any potential for coverage under the Granada policy, relying exclusively on the "Habitability Exclusion Habitability Sublimit" endorsement as the basis for denial. A true and correct copy of that letter is attached as **Exhibit "7."**

**ALLEGATIONS OF "BODILY INJURY" ESTABLISH A POTENTIAL FOR COVERAGE UNDER THE POLICY**

31.    The Policy defines "Bodily Injury" as "bodily injury, sickness or disease sustained by a person . . . ." [**Exhibit "2,"** p. 114/142]

32.    The "Insuring Agreement" for "bodily injury" imposes three conditions for coverage:

> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
> (2) The "bodily injury" or "property damage" occurs during the policy period; and
>
> (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had  occurred, in whole or in part. If such a listed insured or authorized "employee" knew,  prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

33.    All three conditions are satisfied by the facts summarized in Paragraph 1 above and more fully articulated in Claimant's demand letter, attached as **Exhibit "1."** At no time has Granada argued that any of these three conditions is not satisfied by the Underlying Claim.

34.    The demand letter from Claimant states that Claimant suffered injury when she "approached the bathroom area to assess the damage [from the water leak]. As she did so, the ceiling suddenly collapsed, striking her directly in the head and rendering her unconscious." [**Exhibit "1,"** p. 2/3]

35.    The demand letter from Claimant states that damages are sought, in part, due to Claimant suffering "a shooting pain in her head, neck, shoulders and down her

spine." [**Exhibit "1,"** p. 2/3] The demand letter also states Claimant "experienced significant drowsiness, disorientation, and difficulty performing routine tasks." [**Exhibit "1,"** p. 2/3]

36.    To date, Granada has explained its coverage position in three separate letters. None of them has contested whether the Underlying Claim satisfies this initial coverage requirement.

### ALLEGATIONS OF "PEROSNAL AND ADVERTISING INJURY" ESTABLISH A POTENTIAL FOR COVERAGE UNDER THE POLICY

37.    The policy defines offense "c" of "personal and advertising injury" as "invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor." [**Exhibit "2,"** p. 116/142]

38.    Under California law, "[the phrase 'invasion of the right of private occupancy'] connotes disruptions of the ability of a landowner to actually occupy his property, not mere injuries to property." *Stein-Brief Grp., Inc. v. Home Indem. Co.*, 65 Cal. App. 4th 364, 373 (1998).

39.    Here, Claimant asserts that she her ability to occupy the property has been disrupted by the sudden ceiling collapse.

40.    In the demand letter, Claimant states that the ceiling collapse and resulting conditions forced her to vacate the property on June 1, 2025. [**Exhibit "1,"** p. 2/3]

41.    Claimant has thus alleged that her "ability . . . to actually occupy [her] property" was disrupted by the ceiling collapse incident.

42.    Therefore, the allegations of the demand letter satisfy the requirements of offense "c" in Granada's policy, thereby triggering Granada's duty to defend.

### GRANADA FAILED TO DEFEND ITS INSURED

43.    Notice was provided to Granada of the Underlying Claim and requesting an immediate defense.

44.     By issuing and delivering the Policy and taking payment from McCullough, Granada agreed to provide a defense against all claims seeking damages for "bodily injury."

45.     A defense was due to McCullough as an insured under the Policy. The policy states that Granada "will pay those sums that the insured becomes legally obligated to pay" and "will have the right and duty to defend an insured against any 'suit' seeking [damages because of 'bodily injury']." [**Exhibit "2,"** p. 102/142] The same duty is described for "personal and advertising injury" coverage. [**Exhibit "2,"** p. 107/142]

46.     Despite notice to Granada of the Underlying Claim, Granada unreasonably denied any obligation to defend McCullough.

47.     Granada had a duty under the Policy to defend McCullough in the Underlying Claim and Granada owes payment for the reasonable defense expenses incurred by McCullough in defending against the Underlying Claim through its retained counsel.

### GRANADA'S ASSERTED EXCLUSION DOES NOT APPLY

48.     Granada has based its denial of the Underlying Claim entirely on the policy's "Habitability Exclusion Habitability Sublimit" endorsement.

49.     Granada's initial denial provided no analysis to explain why this exclusion might apply, simply reciting the language and stating in a conclusory manner that "[t]he alleged claims and damages that relate to the ceiling collapse at the subject property are not covered under the policy and therefore there is no duty to defend of indemnify [McCullough]." [**Exhibit "3,"** p. 11/13]

50.     Granada clarified in its August 14, 2025 denial that it is relying on the expansive language in the preamble that seeks to eviscerate California's "mixed-action" rule of insurance coverage. *Buss v. Superior Court*, 16 Cal. 4th 35, 49 (1997) ("[W]e can, and do, justify the insurer's duty to defend the entire 'mixed' action

prophylactically, as an obligation imposed by law in support of the policy. To defend meaningfully, the insurer must defend immediately. (*Montrose Chemical Corp. v. Superior Court, supra*, 6 Cal. 4th at p. 295.) To defend immediately, it must defend entirely.")

51.    Granada conceded that its denial is not based on the absence of covered claims but rather on its belief that "there are at least some habitability allegations being made by the client." [**Exhibit "7,"** p. 2/3]

52.    For reasons more appropriately explained in a Motion for Partial Summary Judgment, Granada's construction of the exclusion is overbroad and unenforceable under California law.

    a. Exclusions must be construed narrowly against the insurer, even when the term "arising out of" is incorporated. *My Choice Software, L.L.C. v. Travelers Cas. Ins. Co. of America*, 823 Fed. Appx. 510, 511-12 (9th Cir. (Cal.) Aug. 19, 2025).

    b. Granada does not identify the coverage rights being eliminated in a manner that is "conspicuous, plain, and clear" as required by California law. *Haynes v. Farmers Ins. Exchange*, 32 Cal. 4th 1198, 1204 (2004) ("When coverage is withdrawn without making that change "conspicuous, plain and clear," the elimination of coverage will not be enforced.)

    c. The contextual language of the exclusion would lead a reasonable insured to believe that it applied only to long-term conditions, not sudden events like the ceiling collapse here.

    d. The "Habitability" exclusion's preamble only states that it "modifies" insurance coverage and does not provide specific notice of a "reduction" or "diminishment" in coverage.

    e. The "Habitability" exclusion was attached to the policy via an

endorsement, a practice which California courts have viewed with particular scrutiny. *See Classic Distrib. & Bev. Grp., Inc. v. Travelers Cas. & Sur. Co. of Am.*, No. CV 11-07075 GAF (RZx), 2012 U.S. Dist. LEXIS 129545, at *15–18 (C.D. Cal. Aug. 29, 2012) (collecting cases).

53.    Despite ample opportunity to do so, Granada has provided no alternative basis for its denial and effectively conceded that it must defend if the "Habitability Exclusion Habitability Sublimit" endorsement does not eliminate all potential coverage.

## FIRST CAUSE OF ACTION

## Declaration of Duty to Defend

54.    Plaintiff McCullough incorporates here each and every allegation set forth in the above paragraphs of this Complaint as though fully alleged here.

55.    A valid contract exists between McCullough and Granada, namely, the Policy.

56.    On information and belief, McCullough fully performed all of the obligations and conditions to be performed by it under the Policy and Granada has been paid premiums owed under the Policy each month the Policy was in force.

57.    By issuing and delivering the Policy and taking payments, Granada agreed to provide a defense to McCullough for any potentially covered "bodily injury" claims that lead to the insured's legal obligation to pay for damages, as those terms are defined in the Policy.

58.    Granada failed to provide a defense for McCullough for the Underlying Claim.

59.    No exclusions excuse Granada from defending McCullough against the Underlying Claim.

60.    An actual bona fide controversy exists between McCullough, on the one hand, and Granada, on the other, which requires a judicial declaration by this Court of the party's rights and duties regarding Granada's duties under the Policy, namely

Granada's duty to provide a defense against the Underlying Claim and reimburse all defense expenses incurred by McCullough in defending itself  against the Underlying Claim.

61.    McCullough has suffered and, absent action by this Court, will continue to suffer legally cognizable damages as a result of Granada's inaction to provide a defense.

62.    McCullough is entitled to relief from Granada.

**SECOND CAUSE OF ACTION**

**Breach of Contract**

63.    Plaintiff McCullough incorporates here each and every allegation set forth in the above paragraphs of this Complaint as though fully alleged here.

64.    A valid contract exists between McCullough and Granada, namely, the Policy.

65.    McCullough has fully performed all of the obligations and conditions to be performed by it under the Policy and Granada has been paid premiums owed under the Policy each month the Policy has been in force.

66.    By issuing and delivering the Policy and taking payments, Granada agreed to provide GMP a defense and to pay indemnity for any claims alleging "bodily injury."

67.    No exclusions excuse Granada from defending McCullough against the Underlying Claim.

68.    Granada has not acknowledged that it has an obligation to defend or indemnify McCullough against the Underlying Claim.

69.    Granada has breached its duty to defend McCullough against the Underlying Claim.

70.    As a result of that breach, McCullough has been damaged in the amount of reasonable defense expenses incurred in defending against the Underlying Claim, and in an amount to be proved at trial, and for which Plaintiff McCullough seeks payment, with interest thereon.

## THIRD CAUSE OF ACTION

### Breach of the Covenant of Good Faith and Fair Dealing

71.    Plaintiff McCullough incorporates here each and every allegation set forth in the above paragraphs of this Complaint as though fully alleged here.

72.    Granada has not acknowledged that it has an obligation to defend or indemnify McCullough against the Underlying Claim.

73.    An implied duty of good faith and fair dealing is implicit in every contract, including insurance contracts.

74.    This confers upon the insurer a duty not to unreasonably deny a defense against potentially covered claims and not to withhold in bad faith payment of fees that the insurer is required to reimburse.

75.    Granada acted unreasonably by denying any duty to defend the Underlying claim based on an overbroad reading of the "Habitability Exclusion Habitability Sublimit" endorsement despite multiple letters from McCullough's representatives explaining why Granada's decision was in error and asking Granada to reconsider its denial.

76.    Granada acted unreasonably in not providing an adequate response to demands that it defend its insured, McCullough, against the Underlying Claim.

77.    Granada's actions have been unreasonable and a breach of its implied covenant of good faith and fair dealing with its insured, and has required McCullough to incur fees in order to enforce the policy benefits applicable to the Underlying Claim.

78.    In denying policy benefits and in breaching its duty of good faith and fair dealing toward its insureds, Granada has acted with malice, fraud or oppression.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff McCullough prays for judgment against Defendant Granada as follows:

1.    A judicial declaration that Granada has a duty under its Policy to defend

McCullough against the Underlying Claim;

2. A judicial determination that Granada has breached its contract obligation to defend McCullough against the Underlying Claim;

3. A judicial determination that Granada has breached its contract obligation of good faith and fair dealing to its insured, McCullough, through its unreasonable handling of the Underlying Claim;

4. An award to McCullough of damages against Granada for its breach of the Policy contract;

5. A judicial determination that Granada has breached its implied covenant of good faith and fair dealing;

6. An award to McCullough of damages against Granada for its breach of its covenant of good faith and fair dealing;

7. An award of McCullough's reasonable attorneys' fees incurred in this lawsuit in accord with applicable California law;

8. An award of the costs of this suit;

9. An award of prejudgment interest; and

10. For such other and further relief as this Court may deem just and proper.


Dated: December 16, 2025                    **GAUNTLETT LAW**


                                            By:_____/s/ James A. Lowe_____
                                                 David A. Gauntlett
                                                 James A. Lowe

                                            Attorneys for Plaintiff
                                            WILLIAM D. MCCULLOUGH


## JURY DEMAND

In accordance with Fed. R. Civ. P. 38, Plaintiff hereby requests a trial by jury of all issues triable by a jury.

1

2 | Dated: December 16, 2025

**GAUNTLETT LAW**
By:_____/s/ James A. Lowe_____
      David A. Gauntlett
      James A. Lowe

Attorneys for Plaintiff
WILLIAM D. MCCULLOUGH

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## EXHIBITS TO COMPLAINT

| | |
|---|---|
| **Exhibit "1"** | Claimant's Demand Letter |
| **Exhibit "2"** | Granada Policy |
| **Exhibit "3"** | Granada July 7, 2025 Denial Letter |
| **Exhibit "4"** | Driscoll July 7, 2025 Email |
| **Exhibit "5"** | Granada August 11, 2025 Letter |
| **Exhibit "6"** | Driscoll August 12, 2025 Email |
| **Exhibit "7"** | Granada August 14, 2025 Letter |

323264_1.docx

Complaint